IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.           )   Criminal No. 05-11 Erie<br>)<br>KENNETH FLEETWOOD        ) | |

**DEFENDANT KENNETH FLEETWOOD'S MOTION TO SUPPRESS**
**WITH CITATION TO AUTHORITIES**

AND NOW, comes the defendant, Kenneth Fleetwood, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully moves the Court to suppress evidence found pursuant to a traffic stop that was not based upon reasonable suspicion and statements obtained after the illegal stop. In support thereof Counsel states:

1. Mr. Fleetwood has been charged in a one count indictment with possessing with intent to distribute 50 grams or more of crack cocaine in violation of Title 21 U.S.C. § 841(a) and 841(b)(1)(A)(iii).

2. On March 2, 2005, members of the EAGLE Task Force were conducting surveillance in the vicinity of 448 East 14th Street, Erie, Pennsylvania. Task Force officers had reason to believe 448 East 14th Street was being used by drug dealers from Cleveland, Ohio, as a crack house from which they would sell crack cocaine. While conducting surveillance, officers saw a white Cadillac pull up and park in front of 448 East 14th Street. A white female was driving the vehicle which remained parked in front of the residence with the engine running. Pennsylvania State Police Trooper Richard Houk, a member of EAGLE Task Force, tried to obtain the registration information for the license plate displayed on the white Cadillac. Trooper Houk initially had difficulty reading the last few

characters of the license plate, but after trying two different variations was able to receive registration information for the license plate on the white Cadillac. Trooper Houk learned that the license plate was registered to a white Cadillac. By driving past the parked Cadillac, Trooper Wagner was able to confirm the license plate number and the fact that the car was indeed a white Cadillac as indicated by the registration information received by Trooper Houk.

    3. The Task Force Officers saw two unidentified black men leave the house at 448 East 14th Street and get into the white Cadillac. The black men were later identified as Mr. Fleetwood and Norman Perry. The officers followed the Cadillac to 2125 June Street, Erie, Pennsylvania. On January 14, 2005, Task Force officers had made a controlled purchase of crack cocaine inside the house at 2125 June Street.

    4. Mr. Fleetwood went into the house at 2125 June Street and then left the house and got back into the Cadillac. The Cadillac then left 2125 June Street and eventually began driving westbound on East 26th Street.

    5. Members of the EAGLE Task Force called the Erie Police Department and requested that a marked Erie Police car stop the white Cadillac ostensibly for violating 75 Pa.C.S.A. § 1332, which prohibits operating a motor vehicle with a partially obscured registration plate and several other unspecified traffic violations.

    6. An Erie Police car stopped the Cadillac at the intersection of East 26th and Wallace Streets. The passengers were ordered to remain in the vehicle with their hands in view. Erie Police officers then obtained identification from the driver, Adrianna Havelka, and one of the black men, Norman Perry. Mr. Fleetwood had no identification and told the officers his name was Michael Johnson.

7. The Erie Police Officers then showed the identification to the EAGLE Task Force Officers who had arrived at the scene of the stop. The Task Force officers asked one of the uniformed Erie Police officers to ask Mr. Fleetwood to get out of the car. One of the uniformed officers asked Mr. Fleetwood if he had anything in the car the police should know about, and Mr. Fleetwood said he did not. Mr. Fleetwood was then asked to get out of the car. When Mr. Fleetwood got out of the car, a baggie fell to the ground. The baggie contained suspected crack cocaine. Mr. Fleetwood was then searched and additional baggies of suspected crack cocaine were found.

8. Mr. Fleetwood was arrested and taken to the Erie Police Department. Ms. Havelka was ordered to drive her car to the Erie Police Station where it was searched, and Ms. Havelka was questioned and released.

9. At the police station Mr. Fleetwood identified himself as Michael Johnson and gave a fictitious address.

10. The suspected crack cocaine was tested at the Pennsylvania State Police crime laboratory which confirmed that the substance in the baggies seized from Mr. Fleetwood was crack cocaine. The federal charges were then filed.

11. Because the search and seizure conducted in this case was not performed pursuant to a warrant, the government bears the burden to show that the search or seizure was reasonable. United States v. Johnson, 63 F.3d 242, 245 (3rd Cir. 1995). A police officer's observation of a violation of the motor vehicle code provides reasonable suspicion to support a stop of the offending vehicle and driver. United States v. Johnson, 63 F.3d 242, 245 (3rd Cir. 1995).

12. Title 75 Pa.C.S.A. § 1332(b) states in pertinent part that

> It is unlawful to display on any vehicle a registration plate which :

>   (1) is so dirty as to prevent the reading of the number or letters thereon at a reasonable distance;
>
>   (2) is obscured in any manner which inhibits the proper operation of an automated red light enforcement system in place pursuant to section 3116 (relating to automated red light enforcement system in first class cities); or
>
>   (3) is otherwise illegible at a reasonable distance or is obscured in any manner.

A violation of § 1332(b) is a summary offense which carries a penalty of a $100 fine. 75 Pa.C.S.A. §1332(c).

13. The license plate on the white Cadillac was not obscured in violation of § 1332(b). The evidence will show that the license plate on the Cadillac is recessed into the trunk of the vehicle protecting it from snow build up, and Trooper Wagner was able to read the license plate as he drove past the vehicle as it was parked in front of 448 East 14th Street. Accordingly, there was no basis for stopping the white Cadillac for displaying an obscured registration plate.

14. At the detention hearing, Trooper Wagner testified that he observed the Cadillac proceed partially into an intersection at a red light, and signal a left turn, begin a left turn but then return to its lane of traffic and continue on. Without more details as to where Trooper Wagner was located when he allegedly saw the Cadillac partially enter an unspecified intersection, Mr. Fleetwood cannot address the allegation in detail. However, it is the government's burden to establish the basis for the stop and to present credible evidence that Trooper Wagner was in a position to observe what he claims to have observed. With regard to signaling a left turn but not actually turning left, Mr. Fleetwood is unaware of what provision of the Pennsylvania Motor Vehicle Code this action is alleged to have violated.

15. Even if the stop of the white Cadillac were justified based upon a partially obscured license plate, or some other traffic violation, the detention of Mr. Fleetwood was unreasonable under the Fourth Amendment. Routine traffic stops are governed by Terry v. Ohio, 392 U.S. 1 (1968). Karnes v. Skrutski, 62 F.3d 485, 492 (3rd Cir. 1995); United States v. Brigham, 343 F.3d 490, 498 (5th Cir. 2003).

16. Determining the reasonableness of a Terry stop requires the Court to engage in a two part analysis. As the Supreme Court explained, "in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one – whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20. Mr. Fleetwood has already explained why the traffic stop was not justified at its inception. However, even if the Court believes the traffic stop was justified at its inception, the subsequent seizure and search of Mr. Fleetwood was not reasonably related in scope to the circumstances which justified the seizure.

17. The seizure in this case was purportedly based on minor traffic violations. Mr. Fleetwood was not the driver of the vehicle and could not have provided any information that could have advanced the investigation of Ms. Havelka's alleged offenses of displaying an obscured license plate on her vehicle, partially entering an intersection at a red light, or signaling a left turn and beginning a left hand turn but then changing her mind. Accordingly, asking Mr. Fleetwood for identification, questioning Mr. Fleetwood about his possessions, and asking him to get out of the car unreasonably expanded the scope of the traffic stop. Accordingly, the crack discovered after Mr. Fleetwood got out of the car must be suppressed.

18. Mr. Fleetwood's statements at the Erie Police Department, should be suppressed as fruit of the illegal search and seizure. Wong Sun v. United States, 371 U.S. 471 (1963). "The burden of proving admissibility of a confession that follows from a Fourth Amendment violation rests with the prosecution." United States v. Patino, 830 F.2d 1413, 1418 (7th Cir. 1987) (citations omitted); Brown v. Illinois, 422 U.S. 590, 604 (1975).

It is important to note that the question is not limited to whether the statement was voluntary. The Supreme Court has made this point emphatically.

> In Brown [v. Illinois, 422 U.S. 590 (1975)] and Dunaway [v. New York, 442 U.S. 200 (1979)], this Court firmly established that the fact that the confession may be "voluntary" for purposes of the Fifth Amendment, in the sense that Miranda warnings were given and understood, is not by itself sufficient to purge the taint of the illegal arrest. In this situation, a finding of "voluntariness" for purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment Analysis. See Dunaway v. New York, supra, at 217, 99 S.Ct., at 2259. The reason for this approach is clear: "[t]he exclusionary rule, . . . when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth" Amendment. Brown v. Illinois, 422 U.S., at 601, 95 S.Ct., at 2260. If Miranda warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches and seizures would be reduced to a mere "'form of words.'" Id., at 603, 95 S.Ct., at 2261 (quoting Mapp v. Ohio, 367 U.S. 643, 648, 81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081 (1961)).

Taylor v. Alabama, 547 U.S. 687, 690 (1982).

"In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint." Brown v. Illinois, 422 U.S. 590, 602 (1975) (internal quotations omitted). To determine whether the confession is obtained by exploitation of an illegal arrest, "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and

flagrancy of the official misconduct are all relevant." Brown v. Illinois, 422 U.S. 590, 603-04 (1975) (footnotes omitted) (internal citations omitted).

Applying the Brown factors to this case reveals that Mr. Fleetwood's statements at the Erie Police Station where not sufficiently an act of free will to purge the primary taint of the illegal search and seizure. The statement came within an hour of the illegal stop. There were no intervening circumstances whatsoever. Finally, the purpose and flagrancy of the official misconduct is apparent. EAGLE Task Force officers conducted a pretextual traffic stop on the hunch that the occupants of the vehicle may have been involved in dealing drugs. Failing to suppress Mr. Fleetwood's statements at the Erie Police Department would allow the government to exploit the results of the illegal stop.

WHEREFORE, defendant, Kenneth Fleetwood, respectfully requests that this Honorable Court have a hearing on this motion and enter an Order suppressing the evidence found during the stop of the white Cadillac, and any statements made after the search.

Respectfully submitted,

/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
PA I.D. No. 88653