IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-11 Erie |
| | ) | |
| KENNETH FLEETWOOD | ) | |
| a/k/a Michael R. Johnson | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO SUPPRESS**

AND NOW comes the United States of America, by and through its counsel, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Marshall J. Piccinini, Assistant United States Attorney for said district, and states as follows:

## I. FACTS

On March 2, 2005, Pennsylvania State Police (PSP) Troopers Rich Houk and Eric Wagner and Corporal Robert Toski, members of the Erie Area Gang Law Enforcement (EAGLE) Task Force, were conducting surveillance in relation to a drug investigation in the area of 448 East 14th Street, Erie, Pennsylvania. During their surveillance, the troopers observed a female driver in a parked, white Cadillac with its engine running in front of 448 East 14th Street. The Cadillac's registration plate was partially obscured by snow, necessitating that Corporal Toski guess the digits twice before obtaining what he believed to be the correct registration number. Trooper Wagner then drove by the vehicle to confirm the correct registration plate number.

Thereafter, the troopers observed two black males leave 448 East 14th Street and enter the Cadillac. The troopers followed the Cadillac during which time they observed two more traffic violations, in addition to the obscured registration plate. Specifically, the troopers observed the Cadillac, without first stopping, partially enter an intersection controlled by a red traffic light. The troopers also observed the Cadillac begin to make a turn and then swerve back onto the road.

The driver then parked the Cadillac in front of 2125 June Street, Erie, Pennsylvania, a location where the Eagle Task Force previously had conducted a controlled purchase of crack cocaine on January 14, 2005. The front seat passenger, later identified as Mr. Fleetwood, entered and exited the residence at 2125 June Street and then reentered the Cadillac, whereupon it left the area.

At this point, the troopers sought assistance from the Erie Police Department (EPD) in conducting a traffic stop based on the aforementioned traffic violations. During the traffic stop, the front seat passenger was asked for identification. Stating that he had no identification, the passenger identified himself as Michael Johnson, but law enforcement later discovered that his real name is Kenneth Ray Fleetwood.

EPD officer Chuck Fuhrman asked Mr. Fleetwood to get out of the car and step to the rear. As Mr. Fleetwood did so, EPD officer Royce Smith observed a baggie of suspected crack cocaine

fall from Mr. Fleetwood's sleeve. Officer Fuhrman conducted a search of Mr. Fleetwood and found two more quantities of suspected crack cocaine and a scale. Mr. Fleetwood was arrested and transported to the EPD station.

## II. ARGUMENT

In his Motion to Suppress, the defendant argues that the search and seizure after the traffic stop, as governed by Terry v. Ohio, 392 U.S. 1 (1968), was unreasonable because it was both unjustified at its inception and exceeded the scope of the initial traffic stop. (Def. Mtn. p. 5, ¶16). As demonstrated below, both of the defendant's arguments are without merit.

### A. Law Enforcement Had A Reasonable Suspicion to Conduct an Investigatory Stop

Pursuant to Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a "reasonable, articulable suspicion that criminal activity is afoot." United States v. Bonner, 363 F.3d 213, 217 (3d Cir. 2004), cert. denied, __ U.S. __, 125 S.Ct. 868 (2005) (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Reasonable suspicion, a less demanding standard than probable cause, must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Bonner, 363 F.3d at 217 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)); United States v. Harple, 202 F.3d 194, 196 (3d Cir.

1999) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). To determine whether an investigatory stop was valid, courts must look at the totality of the circumstances surrounding the stop. Bonner, 363 U.S. at 217 (citations omitted).

In the present case, law enforcement officers had two reasonable bases for an investigatory stop: (1) they observed three traffic violations committed by the driver of the Cadillac; and (2) they had articulable facts demonstrating illegal drug activity.

**1. Traffic Violations**

A law enforcement officer who observes a violation of state traffic laws may lawfully stop the vehicle committing the violation. United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004), cert. denied, ___ U.S. ___, 125 S.Ct. 868 (2005) (citing Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977)). In the present case, law enforcement observed three traffic violations while following the white Cadillac between 448 East 14th Street and 2125 June Street, Erie, Pennsylvania.

First, the Cadillac was being operated with a partially obscured license plate in violation of Title 75, Pennsylvania Consolidated Statutes, Section 1332. Under this section, it is unlawful to display on any vehicle a registration plate which is obscured in any manner. 75 Pa.C.S.A. §1332(b)(3). The Cadillac's license plate was partially obscured by snow such that troopers had to guess the digits until they found a sequence that corresponded

with the type of vehicle. Then Trooper Wagner drove by the Cadillac to get a closer look at the partially obscured license plate and try to confirm the number.

The defendant argues that because the license plate was recessed into the trunk of the Cadillac, it was protected from snow build-up and therefore, could not have been obscured by snow. (Def. Mtn., p. 4, ¶13). However, while such a design may help prevent snow build-up it does not ensure that the plate will not be obscured. Trooper Wagner testified at the Detention Hearing that the plate was in fact partially obscured by snow. The defendant does not submit that he or anyone else looked at the plate and saw that it was not partially snow-covered.

The defendant also argues that because the troopers were able to determine the correct registration number, this shows that the plate was not obscured. To the contrary, the registration number was partially obscured, and in fact, the troopers' first guess as to one of the digits was wrong. The fact that the troopers were ultimately able to determine the correct registration number does not absolve the driver of liability nor nullify the legality of the traffic stop. See Commonwealth v. Wilbert, 858 A.2d 1247, 1250 (Pa.Super. 2004) (Officer had probable cause to conduct traffic stop where she was unable to discern the characters on the defendant's registration plate from three to four car lengths, but was able to identify the characters upon close

inspection during the vehicular stop); see also, United States v. Feola, 420 U.S. 671 (1975) (citing United States v. Dotterweich, 320 U.S. 277 (1943)) (Traffic violations generally fall into that category of offenses that dispense with a *mens rea* requirement); Commonwealth v. Parmar, 551 Pa. 318, 331, 710 A.2d 1083, 1089 (Pa. (1998) (criminal statutes imposing absolute or strict liability are typically traffic laws).

Second, the Cadillac proceeded into an intersection controlled by a traffic-control signal exhibiting a steady red indication in violation of Title 75, Pennsylvania Consolidated Statutes, Section 3112(a)(3)(i):

> Vehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, or if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown . . .

In the present case, the troopers observed the Cadillac approach a red light and slowly drive into the intersection before coming to a complete stop within the intersection. The Cadillac did not stop before entering the intersection and entered the intersection while the light was red, both of which constitute violations of Section 3112.

Third, the Cadillac was operated carelessly, in violation of Title 75, Pennsylvania Consolidated Statutes, Section 3714, which provides:

> Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

The driver of the Cadillac violated this statute when she began to make what appeared to be a right-hand turn and then swerved back onto the road without warning.

The troopers' observation of these traffic violations gave them more than enough reason to enlist the assistance of the EPD in conducting a traffic stop.[1] See United States v. Coward, 296 F.3d 176, 179 (3d Cir. 2002) (citing Whiteley v. Warden, 401 U.S. 560, 568 (1971)) (a police officer may rely on the representations of other officers when making an arrest as long as the officers requesting assistance have sufficient information to show probable cause). Clearly, under Third Circuit and Supreme Court case law, they were authorized to do so. See Bonner, 363 F.3d at 216; Mimms, 434 U.S. at 109.

**2. Drug Activity**

Even if the police had not observed the traffic violations, they had a reasonable suspicion that illegal drug activity was occurring and could have conducted an investigatory stop on that basis alone. The Supreme Court has consistently held that an analysis of Fourth Amendment issues involves "an objective

---

[1] The PSP troopers sought the assistance of EPD officers in conducting the traffic stop as a matter of common practice, because the troopers were in plain clothes and unmarked vehicles.

assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

> [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action so long as the circumstances, viewed objectively, justify that action.

Scott v. United States, 436 U.S. 128, 138 (1978). Therefore, even if the troopers' sole purpose for conducting an investigatory stop was the traffic violations and not suspected drug activity, this Court, nevertheless, can uphold the legitimacy of the stop based on the facts demonstrating there was a reason to believe that illegal drug activity was occurring.

In the present case, law enforcement had been conducting a narcotics investigation in the area in question for a few months. The EAGLE Task Force had information from a credible and reliable confidential informant that drug dealers from Cleveland, Ohio were dealing crack cocaine from 448 East 14th Street. In January and February of 2005, Task Force members conducted "trash pulls" at 448 East 14th Street and discovered baggies containing a white powdery substance, which tested positive for the presence of cocaine. On the day in question, Task Force members observed a vehicle stopped in front of 448 East 14th Street with the engine running. They then

observed the defendant leaving 448 East 14th Street and enter the vehicle. They then observed that vehicle leave that location and proceed to 2125 June Street, a residence where the Task Force had conducted a controlled purchase of crack cocaine on January 14, 2005. The defendant then exited the vehicle, walked up to and briefly entered the residence at 2125 June Street and after a brief time exited 2125 June Street and re-entered the vehicle which remained at the curbside running.

Based on all these facts, the troopers had a "reasonable, articulable suspicion that criminal activity was afoot", illegal drug dealing, and could have conducted an investigatory stop on this basis, with or without having observed the traffic violations. Thus, the facts known to the troopers at the time justified an investigatory stop and no violation of the Fourth Amendment occurred.

**B. Law Enforcement Did Not Unreasonably Expand the Scope of the Traffic Stop**

The defendant next argues that even if the initial traffic stop was legitimate, the police unreasonably expanded the scope of the traffic stop when they searched the defendant. He argues that when the police asked for his identification, questioned him about his belongings, and asked him to step out of the Cadillac, they exceeded the scope of the traffic stop because he was not the driver nor could he provide any information to further the investigation into the traffic violations. (Def. Mtn.,

p. 5, ¶17). The defendant's argument is contrary to well settled law.

Indeed, it is well settled that a police officer executing a traffic stop may exercise "reasonable superintendence over the car and its passengers." Bonner, 363 F.3d at 216. The United States Supreme Court has held that upon effectuating a traffic stop, a police officer may order the driver and any passengers out of the vehicle without any particularized suspicion. Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977); Maryland v. Wilson, 519 U.S. 408 (1997).

Accordingly, in this case, the police acted within their authority when they questioned Mr. Fleetwood, who failed to provide any identification, and ordered him to get out of the Cadillac. The officers needed no particularized suspicion in order to do so. As Mr. Fleetwood stepped out of the vehicle, a police officer observed a bag of suspected crack cocaine fall to the ground from Mr. Fleetwood's sleeve. At this point, the officers had reason to expand the scope of the traffic stop.

The Third Circuit has held that after a valid traffic stop, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of his inquiry beyond the reason for the traffic stop and detain the vehicle and its occupants for further investigation. United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) (citation omitted); United States v.

Johnson, 63 F.3d 242, 247 (3d Cir. 1995) (citations omitted). There is no question that in this case, the police had both reasonable suspicion that criminal activity was afoot and probable cause to arrest the defendant when they saw a bag of what appeared to be crack cocaine fall from Mr. Fleetwood's sleeve. Therefore, they could expand the scope of the traffic stop to include suspected drug activity. Accordingly, Mr. Fleetwood's argument must fail and his motion to suppress should be denied.

**C. The Defendant's Statements Were Not Fruit of an Illegal Search and Seizure**

Finally, the defendant argues that any statements he gave to the police at the EPD should be suppressed as fruit of an illegal search and seizure. (Def. Mtn., p. 6, ¶18). As discussed above, no illegal search and seizure occurred, and therefore, Mr. Fleetwood's statements to the police should not be suppressed.

**III. CONCLUSION**

Wherefore, the government respectfully requests this Court to deny the defendant's Motion to Suppress.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney

/s/ Marshall J. Piccinini
MARSHALL J. PICCININI
Assistant U.S. Attorney
PA ID No. 56362

v